1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SERENA ANNE SHIMP,                    Case No. 2:24-cv-01851-CSK

12                      Plaintiff,          ORDER ON PARTIES' CROSS MOTIONS
                                            FOR SUMMARY JUDGMENT
13            v.
                                            (ECF Nos. 14, 16)
14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                      Defendant.
16

17          Plaintiff Serena Anne Shimp seeks judicial review of a final decision by Defendant

18    Commissioner of Social Security denying an application for disability insurance benefits

19    and supplemental security income.[1] In the summary judgment motion, Plaintiff contends

20    the final decision of the Commissioner contains legal error and is not supported by

21    substantial evidence. Plaintiff seeks an immediate award of benefits, or alternatively,

22    remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a

23    cross-motion for summary judgment, and seeks affirmance.

24          For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-

25    motion is GRANTED, and the final decision of the Commissioner is AFFIRMED.

26    / / /

27    _____

28    [1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and
      proceeds on the consent of all parties. (ECF Nos. 7, 11, 12.)

                                              1

**I.       SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS**

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review

1   of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

2   The district court may enter a judgment affirming, modifying, or reversing the final

3   decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial

4   review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has

5   repeatedly admonished that the court cannot manufacture arguments for the plaintiff.

6   *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep.*

7   *Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court

8   should "review only issues which are argued specifically and distinctly," and noting a

9   party who fails to raise and explain a claim of error waives it).

10   A district court may reverse the Commissioner's denial of benefits only if the ALJ's

11   decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d.

12   at 1154. Substantial evidence is "more than a mere scintilla" but "less than a

13   preponderance," i.e., "such relevant evidence as a reasonable mind might accept as

14   adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in

15   the record that both supports and detracts from the ALJ's conclusion, but may not affirm

16   on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th

17   Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in

18   testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision

19   must be upheld where the evidence is susceptible to more than one rational

20   interpretation, or where any error is harmless. *Id.*

21   **II.    FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

22   On February 10,2020, Plaintiff applied for disability insurance benefits and

23   supplemental security income under Titles II and XVI of the Social Security Act, alleging

24   she has been disabled since August 30, 2019. Administrative Transcript ("AT") 386-92;

25   *see* AT 364-85 (available at ECF No. 13). Plaintiff claimed disability due to "bipolar type

26   1," "complex [post traumatic stress disorder]," and "vertical talus." AT 433. Plaintiff's

27   applications were denied initially and upon reconsideration; she sought review before an

28   ALJ. AT 192-93, 224-25, 245-46. Plaintiff appeared with a representative at a July 8,

1   2021 hearing before an ALJ, where Plaintiff testified about her impairments and a

2   vocational expert testified about hypothetical available jobs in the national economy. AT

3   127-157.

4         On August 2, 2021, the ALJ issued a decision finding Plaintiff was not disabled.

5   AT 12-28. The Appeals Council denied Plaintiff's request for review on September 29,

6   2021. AT 1-3. On November 19, 2021, Plaintiff filed a complaint in the United States

7   District Court, seeking judicial review of the Commissioner's final decision that she was

8   not disabled. AT 1213-15. On April 4, 2022, based on the parties' stipulation, the Court

9   remanded Plaintiff's case for further administrative proceedings and a new decision

10  regarding whether Plaintiff was disabled. AT 1229-30. On March 5, 2024, the ALJ held a

11  new hearing. AT 1152-83. On May 16, 2024, the ALJ issued a new decision finding

12  Plaintiff was not disabled. AT 1128-44.

13        At step one, the ALJ found Plaintiff had engaged in substantial gainful activity

14  during the following periods:  April 2023 through May 16, 2024 (the date of the decision).

15  AT 1134. However, the ALJ found that there has been a continuous 12-month period

16  during which Plaintiff did not engage in substantial gainful activity, and the findings

17  address the period that Plaintiff did not engage in substantial gainful activity. AT 1135. At

18  step two, the ALJ determined Plaintiff had the following severe impairments:  depressive

19  disorder, bipolar disorder, personality disorder, post-traumatic stress disorder, and

20  generalized anxiety disorder. *Id.* At step three, the ALJ found Plaintiff's combination of

21  impairments did not meet or medically equal any Listing. *Id.* (citing 20 C.F.R Part 404,

22  Subpart P, Appendix 1). Relevant here, the ALJ considered Listings 12.04 (depression)

23  and 12.08 (personality and impulse-control disorders) for Plaintiff's mental impairments,

24  examining the "Paragraph B" criteria for the mental impairments.[2] The ALJ found Plaintiff

25  _____

26  [2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders
    limit their functioning:  understanding, remembering, or applying information; interacting
    with others; concentrating, persisting, or maintaining pace; and adapting or managing

27  oneself. To be found disabled under the Paragraph B categories, the mental disorder
    must result in an "extreme" limitation of one, or "marked" limitation of two, of the four

28  areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental

1    moderately limited in understanding, remembering, or applying information and adapting

2    or managing oneself, and had moderate difficulties in interacting with others, and

3    maintaining concentration, persistence, or pace. AT 1136. In making these findings, the

4    ALJ noted that Plaintiff is more capable than she alleged. *See id.*

5            The ALJ then found Plaintiff had the residual functional capacity to perform a full

6    range of work at all exertional levels but with the following nonexertional limitations:

7              [Plaintiff] can perform simple, routine, and repetitive tasks in a
             work environment free of fast paced production requirements,
8              involving simple work-related decisions, few workplace
             changes, and no more than occasional interpersonal
9              interaction with supervisors and coworkers, but she cannot
             interact with the general public.
10

11   AT 1137. In crafting this residual functional capacity, the ALJ stated she considered

12   Plaintiff's symptom testimony and the extent to which the symptoms can reasonably be

13   accepted as consistent with the objective medical evidence and other evidence. *Id.* The

14   ALJ also considered the medical opinions and prior administrative medical findings. *Id.*

15           Based on the residual functional capacity, the ALJ determined at step four that

16   Plaintiff was incapable of performing past relevant work. AT 1142. However, at step five,

17   the ALJ found Plaintiff capable of performing other jobs in the national economy,

18   including:  (i) mail clerk, light, SVP 2, with 68,000 jobs nationally; (ii) routing clerk, light,

19   SVP 2, with 76,000 jobs nationally; and (iii) office helper, light, SVP 2, with 60,000 jobs

20   nationally.[3] AT 1144. Thus, the ALJ found Plaintiff not disabled during the relevant

21   period. *Id.*

22

---

23   Disorders, sub. A.2.b. "Paragraph C" of listings including 12.04 and 12.06, provides
     criteria used to evaluate "serious and persistent mental disorders." To be "serious and
24   persistent" there must be a medically documented history of the existence of the mental
     disorder over a period of at least 2 years. *Id.*, sub. A.2.c.
25   [3]  "Light" in the ALJ's step-five determination references light work, as defined by
     20 C.F.R. §§ 404.1567(b) and 416.967(b).
26       "SVP" is "specific vocational preparation," defined as "the amount of lapsed time
     required by a typical worker to learn the techniques, acquire the information, and
27   develop the facility needed for average performance in a specific job-worker situation."
     *See* DOT, App. C, § II, available at 1991 WL 688702.
28

1    On May 4, 2023, the Appeals Council rejected Plaintiff's appeal. AT 446-49.

2  Plaintiff filed this action requesting judicial review of the Commissioner's final decision,

3  and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 14, 16.)

4    On May 27, 2025, the Court asked the parties to address whether the May 16,

5  2024 ALJ decision was reviewed by the Appeals Counsel and to explain whether this

6  impacts the Court's jurisdiction and/or whether the matter is ripe for review. (ECF No.

7  19.) Both parties filed separate briefs as requested. (ECF Nos. 20, 23.) Because the

8  case was already remanded by a federal court, the decision of the ALJ becomes the

9  final decision of the Commissioner unless the Appeals Counsel assumes jurisdiction of

10  the case on its own motion or if the claimant files exceptions disagreeing with the ALJ's

11  decision. *See Petty v. Astrue*, 550 F. Supp. 2d 1089, 1096 (D. Ariz. 2008) (citing

12  20 C.F.R. §§ 404.984(a)-(c)). Here, Plaintiff did not submit written exceptions to the

13  Appeals Council and the Appeals Council did not assume jurisdiction on its own motion.

14  Pl. Supp. Brief at 3 (ECF No. 20). Therefore, the ALJ's decision is the final decision of

15  the Commissioner and the matter is ripe for judicial review.

16  **III.   ISSUES PRESENTED FOR REVIEW**

17    Plaintiff contends the ALJ erred by failing to provide:  (A) specific, clear and

18  convincing reasons for discounting Plaintiff's allegations of mental dysfunction; and

19  (B) failing to provide legitimate and well-supported reasons for departing from the work

20  restrictions set forth in the State agency psychologists' opinions. (ECF Nos. 14, 17.)

21    The Commissioner argues the ALJ:  (A) properly assessed Plaintiff's subjective

22  symptoms; and (B) properly assessed the residual functional capacity by finding the

23  State agency psychological consultants' prior administrative medical findings partially

24  persuasive. (ECF No. 16.)

25  **IV.   DISCUSSION**

26    **A.   Subjective Symptom Testimony**

27    Plaintiff argues that the ALJ's reasons for discounting Plaintiff's allegations of

28  mental dysfunction were not clear and convincing, and her allegations were consistent

1  with medical evidence in the administrative record. Pl. MSJ at 12-20.

2              1.    Legal Standards

3       A claimant's statements of subjective symptoms alone are insufficient grounds to

4  establish disability. 20 C.F.R §§ 404.1529(a), 416.929(a). If an ALJ was required to

5  believe every allegation of pain or impairment, disability benefits would run afoul of the

6  Social Security Act and its purpose. *Treichler v. Comm'r,* 775 F.3d 1090, 1106 (9th Cir.

7  2014). In evaluating the extent to which an ALJ must credit the claimant's report of their

8  symptoms, the Ninth Circuit has stated:

9               First, the ALJ must determine whether the claimant has presented
                objective medical evidence of an underlying impairment which could
10              reasonably be expected to produce the pain or other symptoms
                alleged. In this analysis, the claimant is not required to show that her
11              impairment could reasonably be expected to cause the severity of the
                symptom she has alleged; she need only show that it could
12              reasonably have caused some degree of the symptom. Nor must a
                claimant produce objective medical evidence of the pain or fatigue
13              itself, or the severity thereof.

14              If the claimant satisfies the first step of this analysis, and there is no
                evidence of malingering, the ALJ can reject the claimant's testimony
15              about the severity of her symptoms only by offering specific, clear and
                convincing reasons for doing so. This is not an easy requirement to
16              meet: The clear and convincing standard is the most demanding
                required in Social Security cases.
17

18  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's

19  reasons for discounting or rejecting a claimant's subjective symptom testimony must be

20  sufficiently specific to allow a reviewing court to conclude the adjudicator did not

21  arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493

22  (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing

23  reasons" for discounting or rejecting a claimant's subjective symptom testimony include:

24  prescription of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.

25  2007); inconsistencies between the plaintiff's testimony and conduct (including daily

26  activities), *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); whether the alleged

27  symptoms are consistent with the medical evidence of record, *Rollins v. Massanari*, 261

28

7

1  F.3d 853, 857 (9th Cir. 2001); an unexplained or inadequately explained failure to follow

2  a prescribed course of treatment, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991);

3  or prior inconsistent statements by the plaintiff, *Fair v. Bowen*, 885 F.2d 597, 604 n.5

4  (9th Cir. 1989). A lack of corroborating, objective medical evidence alone is insufficient

5  grounds for an ALJ to discount subjective symptoms; however, it is a factor the ALJ may

6  consider. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

7                    2.       Symptom Testimony re: Mental Impairments

8          When the objective medical evidence in the record is inconsistent with the

9  plaintiff's subjective testimony, the ALJ may weigh it as undercutting the testimony.

10 *Smartt v. Kijakazi*, 53 F.4th 489, 498-99 (9th Cir. 2022). Here, the ALJ found that the

11 activities Plaintiff described in her testimony suggest that Plaintiff is more capable than

12 she alleged and are consistent with the ALJ's functional limitations outlined in the

13 opinion. AT 1138.

14         Regarding Plaintiff's statements that she could not work due to her disabling

15 mental impairments, the ALJ began by summarizing Plaintiff's statements from the 2021

16 and 2024 hearings and her adult function report. AT 1137-38. The ALJ begins by

17 describing Plaintiff's testimony from the "initial hearing." AT 1137. The ALJ's opinion

18 does not provide citation to this hearing, however based on the description, the Court

19 understands this initial hearing to be the July 8, 2021 hearing. At the 2021 hearing,

20 Plaintiff described that she worked at Uber Eats in 2020 and McDonalds in 2019 for

21 short periods of time and stopped due to downward spirals which caused her to get

22 angry. AT 131-32, 134. Plaintiff described how she was fired from multiple other

23 positions in the past and had difficulty dealing with the public. AT 133. Plaintiff stated she

24 left college in 2020 because it was stressful and she was not retaining information. AT

25 133-34. Plaintiff described that she becomes angry and has psychotic episodes where

26 she sees and hears things as part of her manic phase. AT 134-35. She takes

27 medications to help manage her symptoms, but she still has manic and depressive

28 periods. AT 134. Plaintiff testified that she did not know how often she has the psychotic

1    episodes and has trouble sleeping but takes medication that had not been as helpful as

2    it was in the past. AT 135. Plaintiff spends her days "all over the place" and stays inside

3    and helps out around the house. AT 136. She enjoys graphic designing and coloring,

4    and cannot maintain focus and concentration all the time. *Id.* Plaintiff testified that she

5    has problems with memory and needs reminders for her personal care. AT 137. Plaintiff

6    stated she enjoys going to the park, AA meetings, and shopping with her mom but gets

7    overstimulated and distracted easily. AT 137-38.

8         Plaintiff testified that she experiences panic attacks from anxiety where she

9    experiences shortness of breath, cries, and "freak[s] out." AT 139. Plaintiff sleeps a lot

10   during bipolar or depressive episodes. AT 140. Plaintiff described getting angry with

11   coworkers, supervisors, and family members. AT 142-43. Plaintiff testified that she was

12   admitted in May 2021 for psychosis where she hears voices in her head. AT 145.

13        The ALJ also described Plaintiff's testimony during the "supplemental hearing."

14   AT 1138. Based on the content described, the Court understands this to be the March 4,

15   2024 hearing. AT 1152-83. Plaintiff described how she was involved in domestic

16   violence in 2019 and became mentally distraught. AT 1159. She described being

17   admitted to the hospital four different times in a two-month period. *Id.* Plaintiff went back

18   on medication and to therapy after these hospitalizations, but a year later she had

19   stopped going to therapy and taking the medications. AT 1160. In 2021, Plaintiff was

20   hospitalized because she could not keep it together and described difficulties with

21   memory and concentration. AT 1165-66. Plaintiff described experiencing manic and

22   depressive periods even while on medication. AT 1168. In 2021, Plaintiff started therapy

23   and taking her medications again, and showed improvement after being consistent for

24   about three years. AT 1160, 1170-71. Plaintiff described being on an intense medication

25   regimen and experienced some side effects. AT 1171-72. Plaintiff accepted part-time

26   work in November 2022 and accepted a full-time job in April 2023. AT 1157-59.

27        The ALJ also considered Plaintiff's function report from 2020. AT 480-87. Plaintiff

28   states she lives in a house with her family and smokes cigarettes, watches TV, goes on

1  Instagram, makes frozen meals for herself, studies rarely, feeds her pet rats and cleans

2  their cage, cleans the bathroom, does laundry and dishes, goes outside, goes shopping,

3  knits, and does her makeup, amongst other things. *Id.*

4      The ALJ noted that Plaintiff's symptom testimony is not entirely consistent with the

5  medical evidence and other evidence of record. AT 1139-42. The ALJ noted that Plaintiff

6  was treated for personality disorder, bipolar disorder, post-traumatic stress disorder, and

7  anxiety disorder since 2018, with increasing symptoms in February and March 2019. AT

8  524, 526, 551 (dated 12/5/2016), 965,1139. Plaintiff was psychiatrically admitted to a

9  hospital from September 11 through September 24, 2019 and was discharged after her

10  mental status examination showed she was generally within normal limits. AT 624, 625-

11  26, 629, 964, 1139. Plaintiff was again hospitalized from October 14 through October 17,

12  2019 for bipolar disorder, she had mania and psychosis, and racing thoughts and

13  auditory hallucinations. AT 977, 988-89, 1139. The ALJ noted that Plaintiff's mood,

14  eating, sleeping, energy levels, and motivation improved with treatment. AT 989, 1139.

15  Plaintiff attended follow-up examinations in November and December 2019 for bipolar

16  disorder and her symptoms were reported as mild. AT 784, 787, 789, 1139. Plaintiff's

17  psychiatric examinations were normal and she did not report having difficulty sleeping.

18  AT 791, 799. She was oriented and had appropriate mood and affect, and normal insight

19  and judgment. AT 787. A medical exam from January 2020 indicated that Plaintiff had

20  rapid speech, she was verbose, excited and irritable in tone, mood elevated, irritable

21  affect, goal directed, had fair insight/judgment, and was alert and oriented. AT 936.

22      Plaintiff's medication was adjusted in January 2020. AT 948. On the new

23  medication, Plaintiff reported that though she initially had some passive suicidal ideation

24  with the medication changes, this has resolved and she had improvement in mood

25  lability. AT 951. In April 2020, Plaintiff reported that her mood and irritability were

26  improved, and reported improved symptoms on medication. AT 960. Plaintiff reported

27  improvements in June 2020. AT 962. In September 2020, progress notes indicate that

28  Plaintiff felt less motivation and was concerned that her depression was returning, and

1    she reported relapsing on THC. AT 1058. In October 2020, Plaintiff reported feeling

2    better and that her mood and sleep patterns were well controlled. AT 1055.

3         In May 2021, Plaintiff was hospitalized again for psychosis and mood problems.

4    AT 1110. She received treatment from Wellspace Health after this hospitalization. AT

5    1389. She reported that did not have suicidal or homicidal ideations. *Id.* In November

6    2021, Plaintiff was evaluated for a 5150.[4] AT 1589. In December 2021, Plaintiff noted

7    that medication has been helpful but she struggled with side effects. AT 1597. In

8    January 2022, Plaintiff reported a stable mood after adjusting her medication, but had

9    some residual anxiety. AT 1606. In April and May 2022, Plaintiff reported a stable mood

10   (AT 1626, 1632), and in June 2022 her mental status examination was generally within

11   normal limits (AT 1641). Her mental status examinations were generally normal in July

12   and September 2022. AT 1649, 1651, 1664, 1666.

13        In November 2022, Plaintiff reported working again. AT 1688. In January 2023,

14   she reported having a boyfriend and that her medications have been helpful. AT 1703. In

15   February 2023, plaintiff reported increased moodiness but her mental status examination

16   was normal. AT 1709, 1711.

17        The ALJ discussed how Plaintiff had some hospitalizations and severe symptoms

18   in 2019, she improved with medications and was stable with treatment until May 2021,

19   when she was hospitalized again, but her symptoms again improved afterwards. AT

20   1141.

21        The ALJ has provided clear and convincing reasons for finding that Plaintiff is

22   "more capable than she alleged." AT 1138. The ALJ considered Plaintiff's

23   hospitalizations in 2019, but found that Plaintiff improved and stabilized on treatment

24   _____

25   4   A "5150" refers California Welfare and Institutions Code section 5150, which
     authorizes qualified individuals to involuntarily take, upon probable cause, a person into
26   custody who, "as a result of a mental health disorder, is a danger to others, or to
     themselves, or gravely disabled." Cal. Welf. & Inst. Code § 5150. The person may be
27   taken into custody for a period of up to 72 hours for "assessment, evaluation, and crisis
     intervention, or placement for evaluation and treatment in a facility designated by the
28   county for evaluation and treatment." *Id.*

1    with medications. AT 1141.

2    　　　Further, the ALJ found that Plaintiff's activities of daily living were inconsistent

3    with her claims of disabling symptoms. *See* AT 1138. Plaintiff argues that the mere fact

4    that Plaintiff tried and failed to lead a normal life is not a reason to discount her

5    subjective symptoms. Pl. MSJ at 19. Plaintiff alleged that she had difficulty completing

6    tasks, concentrating, understanding, and getting along with others. AT 485, 1138. But

7    Plaintiff also could drive, attend school, pay bills, watch television, care for her pets, knit,

8    and tend to household chores. AT 481-84, 789, 1138-39. Plaintiff enjoyed graphic design

9    and coloring. AT 136, 1138. Plaintiff lives with her family, shops with her mom, spends

10   time with others, and attended AA meetings. AT 481-84, 1138. These are permissible

11   reasons to find that Plaintiff was more capable than she alleged despite Plaintiff's

12   statements that she had difficulty completing tasks, concentrating, understanding,

13   following instructions, and getting along with others. *See Molina*, 674 F.3d at 1113

14   ("Even where those activities suggest some difficulty functioning, they may be grounds

15   for discrediting the claimant's testimony to the extent that they contradict claims of a

16   totally debilitating impairment."); *Burch*, 400 F.3d at 680-81 (noting that though cited

17   daily activities "may also admit of an interpretation more favorable to [the plaintiff], the

18   ALJ's interpretation was rational" and must be upheld where susceptible to more than

19   one rational interpretation).

20   　　　Plaintiff argues that Plaintiff's symptom improvement in April, June, and October

21   2020 was temporary and did not reflect sustained improvement in her mental condition.

22   Pl. MSJ at 16. However, based on the evidence, Plaintiff did not have another setback

23   until May 2021 when she was hospitalized, and had seven months of apparent stability.

24   Further, after the May 2021 hospitalization, Plaintiff demonstrated stability within a year

25   of treatment. AT 1140-41.

26   　　　Finally, the ALJ did not wholly discount Plaintiff's symptom statements, such that

27   she was deemed able to perform any job in the national economy. Plaintiff was found to

28   be able to perform work at all exertional levels with some nonexertional limitations. AT

1144. Plaintiff was limited to simple, routine, and repetitive tasks. AT 1137. Under the

regulations, Plaintiff's statements of subjective symptoms alone are insufficient grounds

to establish disability. 20 C.F.R §§ 404.1529(a), 416.929(a). The Court finds the ALJ

provided sufficiently specific reasons for discounting the more severe aspects of

Plaintiff's symptom testimony regarding her mental impairments, such that the Court

does not find Plaintiff's testimony was arbitrarily discredited. *See Brown-Hunter*, 806

F.3d at 493.

**B.     Residual Functional Capacity Formulation**

Plaintiff argues that the ALJ did not provide legitimate and well-supported reasons

to depart from the work restrictions outlined in the State agency psychologists' opinions.

Pl. MSJ at 24-25.

1.     Residual Functional Capacity Legal Standards

A claimant's residual functional capacity assessment is a determination of what

the claimant can still do despite his or her physical, mental and other limitations.

20 C.F.R. § 404.1545(a). The residual functional capacity is the "maximum degree to

which the individual retains the capacity for sustained performance of the physical-

mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In

determining a claimant's residual functional capacity, an ALJ must assess all the

evidence (including the descriptions of limitation, and medical reports) to determine what

capacity the claimant has for work despite the impairment(s). 20 C.F.R. § 404.1545(a);

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (a residual

functional capacity that "fails to take into account a claimant's limitations is defective").

Therefore, an ALJ errs when she provides an incomplete residual functional capacity

ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th

Cir. 2012).

The residual functional capacity does not need to directly correspond to a specific

medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical

findings into a succinct [residual functional capacity]." *Rounds v. Comm'r of Soc. Sec.*

1   *Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). ALJs are capable of independently

2   reviewing and forming conclusions about medical evidence to determine whether a

3   claimant is disabled and cannot work, as required by statute. *Farlow v. Kijakazi*, 53 F.4th

4   485, 488 (9th Cir. 2022). The ALJ's residual functional capacity assessment should be

5   affirmed if the ALJ has applied the proper legal standard and the decision is supported

6   by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.

7   2005).

8                           2.       Medical Opinion Evidence Legal Standards

9           For applications filed on or after March 27, 2017, an ALJ need "not defer or give

10  any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

11  prior administrative medical findings, including those from [a plaintiff's] medical sources."

12  20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, the ALJ is to evaluate medical

13  opinions and prior administrative medical findings by considering their "persuasiveness."

14  *Id.*

15          In determining how "persuasive" the opinions of medical sources and prior

16  administrative medical findings are, an ALJ must consider the following factors:

17  "supportability, consistency, treatment relationship, specialization, and 'other factors.'"

18  20 C.F.R. §§ 404.1520c and 416.920c at sub. (b) and (c)(1)-(5). Despite a requirement

19  to "consider" all factors, the ALJ only need articulate a rationale on how the supportability

20  and consistency factors were considered, as they are "the most important factors." *Id.* at

21  sub. (b)(2). A medical opinion is supported if the medical source explains the relevant

22  objective medical evidence. *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). A

23  medical opinion's consistency concerns its alignment with other medical and nonmedical

24  sources in the record. *Id.* at 792. The regulations grant the ALJ flexibility to weigh the

25  supportability and consistency factors based on all evidence in the record. 20 C.F.R.

26  §§ 404.1520c(c)(1)-(2) and 416.920c(c)(1)-(2). The ALJ is not required to articulate

27  findings on the remaining factors (relationship with plaintiff, specialization, and "other")

28  unless "two or more medical opinions or prior administrative medical findings about the

1    same issue" are "not exactly the same," and both are "equally well-supported [and]

2    consistent with the record." *Id.* at sub. (b)(2)-(3). An ALJ may address multiple opinions

3    from a single medical source in one analysis. 20 C.F.R. §§ 404.920c(b)(1) and

4    416.920c(b)(1) ("source-level articulation"). Generally speaking, the ALJ does not need

5    to discuss every piece of evidence when interpreting the evidence and developing the

6    record. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

7                    3.    Analysis

8          When determining the residual functional capacity, the ALJ considered the

9    assessments of the State agency psychological consultants. AT 1142. The consultants

10   limited Plaintiff to simple and routine tasks and low stress work with 1 to 2 step tasks.

11   AT 1142; *see* AT 174, 186-88, 203-05, 218-20. The ALJ found the assessments of the

12   consultants partially persuasive to the extent they are supported by the objective medical

13   evidence and consistent with the record as a whole. AT 1142. The ALJ stated she

14   disagreed that Plaintiff is limited to low stress work, because this term is not defined, but

15   the ALJ also included in the residual functional capacity that the Plaintiff is precluded

16   from working in a fast-paced production environment and is limited to simple work

17   related decisions. *Id.* The ALJ also disagreed that Plaintiff was limited to simple 1 to 2

18   step tasks because it is inconsistent with the mental status examinations that show

19   Plaintiff was generally within normal limits. *Id.*

20         Here, the ALJ properly considered the opinions of the State agency psychological

21   consultants and found the opinions partially persuasive. The ALJ disagreed with the

22   opinions to the extent that the limitation to simple 1 to 2 step tasks was inconsistent with

23   the mental status examinations that show Plaintiff was generally within normal limits, or

24   supporting that she could perform simple, routine tasks. AT 1142. The medical evidence

25   supports the ALJ's finding that Plaintiff's mental status examinations were generally

26   within normal limits. *See* AT 1633-34, 1643, 1651, 1666, 1690; *see also* AT 1449, 1453,

27   1585-86, 1598, 1601, 1607, 1711, 1721, 1734.

28         Plaintiff also argues that the ALJ restricted Plaintiff to occasional interaction with

1  supervisors and coworkers, but did not account for the State agency psychological

2  consultants' assessment that the interaction should be "superficial." Pl. MSJ at 24.

3  Plaintiff argues there is a distinction between "occasional" and "superficial." *Id.* at 24-25.

4  Defendant argues that Plaintiff has not shown that there is any potential prejudicial error.

5  Def. MSJ at 14.

6        Here, the ALJ found the Plaintiff's normal mental status examinations supported

7  that Plaintiff could perform simple, routine, and repetitive tasks with the ability to interact

8  with others. *See* AT 1142. Despite this finding, the ALJ limited Plaintiff to occasional

9  interpersonal interaction with supervisors and coworkers, and no interaction with the

10  general public. AT 1137. Further, the ALJ only found the State agency psychological

11  consultants' opinions to be partially persuasive. Based on the ALJ's assessment of the

12  State agency psychological consultants' opinions, the ALJ did not commit error by

13  limiting Plaintiff to "occasional" interaction with supervisors and coworkers.

14  **V.    CONCLUSION**

15        Having addressed all of the points of error raised by Plaintiff, the Court finds the

16  ALJ's decision otherwise supported by substantial evidence in the record and free from

17  legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if

18  the ALJ's decision "contains legal error or is not supported by substantial evidence").

19                                    **ORDER**

20        Accordingly, the Court ORDERS:

21    1.    Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;

22    2.    The Commissioner's cross-motion (ECF No. 16) is GRANTED;

23    3.    The final decision of the Commissioner is AFFIRMED; and

24    4.    The Clerk of the Court is directed to CLOSE this case.

25  Dated:  06/30/25

26                                    _____
                                      CHI SOO KIM
27                                    UNITED STATES MAGISTRATE JUDGE

28  5, shim.1851.24

                                      16